In re STUBBS.

(District Court, D. Wyoming.   June 1, 1922.)

No. 511.

Bankruptcy ⬦68—Persons subject to adjudication; ranchman held not "person engaged chiefly in farming or tillage of soil."

A ranchman, whose principal business was the raising of live stock for market, whose 1,400 acres of land, except 180 acres, was used for grazing, and of the 180 acres three-fourths was in alfalfa cut for winter feed, and the remainder in cultivated crops used on the ranch, *held* not "a person engaged chiefly in farming or tillage of the soil," within the meaning of Bankruptcy Act, § 4b (Comp. St. § 9588).

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of W. A. Stubbs, alleged bankrupt. On involuntary petition and defense thereto. Order of adjudication.

M. A. Kline and W. E. Mullen, both of Cheyenne, Wyo., for petitioning creditors.

P. C. Spencer, of Cheyenne, Wyo., and G. R. Hagens, of Casper, Wyo., for alleged bankrupt.

KENNEDY, District Judge. The above-entitled proceeding is before the court upon a resistance to the petition of creditors seeking to have the said Stubbs adjudicated a bankrupt. The only point to be decided by the court upon the issues joined is as to whether or not Stubbs comes within the purview of the National Bankruptcy Act (Comp. St. §§ 9585–9656), which excepts in subdivision "b" of section 4 of that act a person engaged chiefly in farming or the tillage of the soil.

Evidence was introduced before the court by the parties, and while this evidence was not perpetuated it tended to show substantially the following facts: That Stubbs had been for a considerable number of years engaged in a business commonly known and described in this Rocky Mountain region as "ranching"; that during said period Stubbs became the financial backer of two parties who were engaged in a mercantile business consisting of a small general store at Kaycee, a small town in the northern portion of this state; that the mercantile venture proved not to have been profitable, and it became necessary for Stubbs, for his own financial protection, to take over the business and assume the obligations; that thereafter, through agents and servants, he continued to conduct said business with a view to saving his investment by eventually disposing of the property at the best advantage possible; that the debts in this business increased rather than diminished, eventually bringing about the petition in bankruptcy now before the court; that in addition to these debts Stubbs was at the time of the hearing a heavy borrower from banks, the proceeds of such loans having been used in financing his ranch and live stock operations; that these particular obligations were largely, if not entirely, secured by chattel and real estate mortgages; that Stubbs, becoming heavily involved as aforesaid, transferred by deeds and bills of sale his real estate used in his ranching business and his live stock to a brother, under an arrangement by which this should continue until he should be able to work himself out of financial difficulties; that Stubbs, after the time he took over the mercantile business, operated it almost exclusively through servants and employés, gave it little or no attention, was not familiar with the particular business, and during said time continued to devote his attention to his ranching business; that in pursuance of said ranching business Stubbs had been engaged chiefly in raising live stock for the market, such live stock consisting of cattle, horses, sheep, and hogs; that his ranch consisted of approximately 1,-400 acres, scattered through three different counties in this state; that a portion of this real estate, approximately 180 acres, was under irrigation and in cultivation, about three-quarters of this cultivated area being used for the raising of alfalfa hay, which was fed to his live stock in the winter season; that the remainder of said cultivated area, not

exceeding 50 acres, was used for the raising of small grain, potatoes, and other crops; that the entire balance of the acreage owned by Stubbs, together with outside open range, was used in grazing his live stock; that the small grain, potatoes, and other small crops raised upon the smaller acreage was used by him generally in and about his ranch home as foodstuffs and feeding purposes, and that few, if any, of these particular crops were marketed; that some chickens were also raised, the eggs therefrom being used upon the ranch, as well as the chickens, for home consumption; that the live stock in number consisted of approximately 1,100 head of cattle, horses not greatly in excess of the number required to ride the ranges and care for the cattle, and a small number of hogs.

Two propositions were easily determinable upon the hearing, and in fact were not particularly in dispute as between the parties; the first being that Stubbs was insolvent at the time the petition in bankruptcy was filed, which continued up to the time of the hearing, and, second, that the chief occupation of Stubbs was not the mercantile business in which he had become involved at Kaycee, but that his chief occupation was "ranching," as aforesaid. This leaves the sole matter for determination by this court as to whether or not a ranchman, so called, is "a person engaged chiefly in farming or the tillage of the soil," within the purview of the Bankruptcy Act (Comp. St. § 9588).

Numerous authorities have been cited by counsel, in which a variety of circumstances have been discussed, and it has been decided that certain circumstances bring or fail to bring a person within the scope and meaning of the last above quoted clause of the act. These authorities, however, are not particularly enlightening, as none of them has directly discussed or decided as to whether or not a ranchman in this particular region is within or without the designated classification. It has been rather aptly stated in the case of In re Mackey (D. C.) 110 Fed. 355, that—

"it is evident that it is impracticable, if not impossible, to define with precision the facts which will in all cases determine whether one is engaged chiefly in farming, and that each case must be decided on its own circumstances."

In analyzing the designated clause of the Bankruptcy Act here under discussion, courts have not been in complete harmony as to whether the word "farming" and the phrase "tillage of the soil" mean one and the same thing. The Circuit Court of Appeals, however, of the Eighth Circuit (our own), has spoken upon this subject, settling the controversy so far as this court is concerned. The court's language in the case of Hart-Parr Co. v. Barkley, 231 Fed. 913, at page 915, 146 C. C. A. 109, at page 111, is as follows:

"The words 'farming or the tillage of the soil,' as used in subdivision 'b' of section 4, Act of July 1, 1898, express the same thought: that is, the word 'farming' and the words 'tillage of the soil' mean the same thing."

It would therefore seem to this court that this particular construction of the clause would place more of a restricted meaning upon the term "farming," by saying that it is synonymous with "tillage of the soil," than if the word "farming" might be used in perhaps its broader sense.

If we apply the phrase "tillage of the soil" to the facts in the case at bar, it seems to this court that we must come far short of bringing Stubbs within the classification. His chief occupation was undoubtedly, under the facts as shown by the evidence, the raising of live stock for market. In the consummation of this endeavor lands under cultivation were used to produce hay to feed his live stock, and the remainder of the crops so raised were used either for feeding the animals or in maintaining his ranching establishment, which included the maintenance of his family and the boarding of his hired help. Under these circumstances it would seem that there is no such "tillage of the soil" as would seem to have been contemplated by the Bankruptcy Act, as the crops raised by cultivation were not marketed, but simply harvested for the purpose of carrying on his principal livestock business. If the circumstances were somewhat reversed, and a person were actually tilling a large proportion of his land, and using the balance for grazing, and in connection therewith running a proportionately small number of live stock, the situation would manifestly be changed.

Another circumstance which is impelling to the court in arriving at this conclusion is that in this particular region there is a sharp distinction recognized between the occupation known as "ranching" and that known as "farming."

For the reasons stated, the petition to adjudicate Stubbs a bankrupt will be granted, and an order of adjudication allowed, reserving to him his proper exceptions.