## In re PALMA BROS.

District Court, D. Nevada.

Nov. 9, 1934.

A. J. Maestretti, of Reno, Nev., for debtor.

N. J. Barry, of Reno, Nev., for W. J. Tobin, receiver.

Platt & Sinai, of Reno, Nev., for Leo F. Schmitt, receiver.

NORCROSS, District Judge.

A debtor's petition on behalf of Aureglio Palma, Henry Palma, Louis Palma, and An-

gela Palma, doing business under the firm name and style of Palma Brothers, with prayer that the same be approved and proceedings had in accordance with the provisions of section 75 of the Bankruptcy Act (11 USCA § 203), was filed October 8, 1934.

The petition alleges:

"That they are personally bona fide engaged primarily in farming operations and the raising of live stock that such farming operations occur in the county of Eureka within said judicial district; that they are unable to meet their debts as they mature; and that they desire to effect a composition or extension of time to pay their debts under section 75 of the Bankruptcy Act.

"That the schedule hereto annexed, marked 'A,' and verified by your petitioner's oath, contains a full and true statement of all their debts and the names and places of residence of their creditors, and such further statements concerning said debts as are required by the provisions of said act.

"That the schedule hereto annexed, marked 'B,' and verified by your petitioner's oath, contains an accurate inventory of all his property, both real and personal, and such further statements concerning said property as are required by the provisions of said act."

The said schedules A and B as described in the petition do not appear attached thereto, but in lieu thereof is "Debtor's Application for Hearing on Farm Debts" before the "Farm Debt Adjustment Committee of Eureka County." From the said application, debtor's assets and value thereof appear as follows: Land owned and operated, $15,000; hay, 200 tons, $1,600; horses 19, mules 4, $1,000; stock, cattle 28, hogs 5, milk cows 4, calves 7, total value $800; poultry 200, $50; sheep 6,500, $25,000. Total assets $45,950. Liabilities appear as follows: Real and chattel mortgages on all real and personal property to Reno National Bank and Bank of Nevada Savings & Trust Company, $62,000; interest and additional advances due said banks, $68,000; other liabilities, $9,500. Total liabilities, $139,500.

On October 11, 1934, the receiver of the Reno National Bank and the receiver of the bank of Nevada Savings & Trust Company filed a petition in which the jurisdiction of this court is challenged to hear said debtor's petition or "to make any further order in the above entitled matter." On October 15, 1934, there was filed upon the part of said receivers a notice of motion and motion for an order directing and authorizing said receivers to sell the property covered by said chattel mortgages. Objections to the granting of such motion were filed at the time noticed for the hearing thereof, October 22, 1934. A hearing was had upon the respective petitions, motions, and objections, upon the conclusion of which the court requested counsel for the respective parties to file a concise statement of their contentions, which has been done and the matter submitted.

The primary and controlling question is the jurisdiction of this court to entertain the debtor's petition. It is urged upon the part of counsel for said receivers that the said debtors are not "farmers" within the purview of section 75 of the Bankruptcy Act (11 USCA § 203) and, therefore, not entitled to proceed under the provisions of that section.

It is clear not only from the debtor's petition but also from the testimony adduced upon the hearing that the principal source of income of debtors is derived from the sheep, particularly the annual product thereof of wool and lambs. The ranch properties of the debtors are in the main and practically entirely a necessary incident to the sheep business.

Section 75, dealing with the general subject-matter of "Agricultural Compositions and Extensions," contains among others the following provisions: "(r) For the purpose of this section and section 74 [section 202], the term 'farmer' means any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations. * * *" (11 USCA § 203(r).

The form of a debtor's petition (Form No. 65) as appears from the General Orders in Bankruptcy adopted by the Supreme Court contains the following statement: "That he is personally bona fide engaged primarily in farming operations (or that the principal part of his income is derived from farming operations) as follows * * *."

It is instructive here to note that debtor's petition in the last mentioned respect reads: "That they are personally bona fide engaged primarily in farming operations and the raising of live stock * * *."

The expression appearing in section 22, 11 USCA, section 4 of the Bankruptcy Act, reading: "Any natural person, except * * * a person engaged chiefly in farming or the tillage of the soil, * * * may be adjudged an involuntary bankrupt, * * *" has frequently been considered by the courts in determining the question wheth-

er a particular debtor was liable to be adjudged an involuntary bankrupt.

It was held by the Circuit Court of Appeals of this Circuit in Re Brown et al., 253 F. 357, quoting from the syllabus, that: "An alleged bankrupt, who, although conducting a large farm, also built and operated a packing house, creamery, and poultry yards, buying live stock and poultry, and who contracted the larger part of his indebtedness in connection with business other than farming, held not chiefly engaged in farming."

The case of In re Stubbs (D. C.) 281 F. 568, District of Wyoming, is one where the facts considered are very similar to those presented in the case at bar. The syllabus reads: "A ranchman, whose principal business was the raising of live stock for market, whose 1,400 acres of land, except 180 acres, was used for grazing, and of the 180 acres three-fourths was in alfalfa cut for winter feed, and the remainder in cultivated crops used on the ranch, held not 'a person engaged chiefly in farming or tillage of the soil,' within the meaning of Bankruptcy Act, § 4b (Comp. St. § 9588 [11 USCA § 22 (b)])."

In the opinion of Kennedy, District Judge, also appears the following: "Another circumstance which is impelling to the court in arriving at this conclusion is that in this particular region there is a sharp distinction recognized between the occupation known as 'ranching' and that known as 'farming.'"

Assuming without so deciding, the question not having been raised, that several persons constituting a partnership may be within the meaning of the word "farmer" as used in section 75 (11 USCA § 203) and may join in a petition under the provisions of said section, nevertheless where it appears that they are engaged primarily in the live stock business as distinguished from that of farming operations they do not come within the purview of the section. See, also, In re Brown (D. C.) 284 F. 899; Hart-Parr Co. v. Barkley (C. C. A.) 231 F. 913; In re Spengler (D. C.) 238 F. 862; Bank of Dearborn v. Matney (D. C.) 132 F. 75; In re Macklem (D. C.) 22 F.(2d) 426.

Under the rule governing proceedings under said section 75 it is provided: "Upon the filing of the petition the judge shall enter an order either approving it as properly filed under the section, or dismissing it for want of jurisdiction."

The debtor's petition is, therefore, dismissed for want of jurisdiction.

The motion of the said receivers, for the reason that it cannot be considered upon this proceeding, is also dismissed for want of jurisdiction.