**In re HILLIKER.**

**No. 23797.**

District Court, S. D. California, C. D.

Feb. 11, 1935.

Stoner & Gardner and George Gardner, all of Los Angeles, Cal., for bankrupt.

Edmund Nelson and Hugo Steinmeyer, both of Los Angeles, Cal., for objecting creditor.

Samuel W. McNabb, of Los Angeles, Cal., United States referee in bankruptcy.

JAMES, District Judge.

The debtor herein in August, 1934, filed with the farm conciliation commissioner of Los Angeles county his petition under section 75 of the Bankruptcy Act, as amended (11 USCA § 203). He owed debts in excess of $30,000. The only parcel of alleged farm property listed was forty acres of land planted principally to citrus fruits of an alleged value of $15,000, with mortgage encumbrances against it amounting to $18,580. The debtor possessed lots and interests in city lots which were largely encumbered; also an interest in an oil well; also the equipment of a dental office. He has been a practicing dentist in Los Angeles City for the past thirty-five years and is continuing in that business.

After filing his petition with the conciliation commissioner, he submitted a proposal to his creditors that he be given a ten-year extension for the payment of all of his debts, which he stated would be without interest when paid, and that he should make payments thereon "in such installments and at such times within said ten-year period as may be most convenient and feasible for your debtor to pay. During said extension period, debtor proposes to continue his farming operations under his own supervision." The proposal on its face bordered on the preposterous and it may well be that the debtor had no idea when he made the offer that any creditor would think for a moment of giving acceptance to it. It hardly need be stated that the proposition was rejected. The debtor at once proceeded under subdivision (s) of section 75, as added by Act June 28, 1934 (11 USCA § 203 (s), to petition to be adjudicated a bankrupt. When the latter petition was filed, the order of adjudication was made and the matter came before the referee in bankruptcy. Creditors immediately objected to the jurisdiction of the bankruptcy court, claiming that the petition was not filed in good faith, and that the debtor was not a "farmer" within the definition of the law. Referee McNabb proceeded to hear the testimony, and sustained the contention that the debtor was not a farmer, and certified the matter to this court for dismissal. Simultaneously a creditor brought on a motion before the court to dismiss the petition on the same ground. It was stipulated by counsel for the alleged bankrupt and the creditor interests

that on the motion of the creditor to dismiss, the court should consider the transcript of the testimony taken before the referee, although it was agreed that the findings of the referee should not in anywise influence the court in the making up of an independent judgment on the evidence.

I have read all of the testimony as set forth in the transcript. The summary of the facts, including the figures used by the referee in his statement, I find to correctly state the conditions as the testimony showed them to be.

 Section 75 and the subsequent addition of subdivision (s) thereto were intended to benefit farmers who actually pursue that line of endeavor. The distressed condition of tillers of the soil was well known, and the purpose of Congress was in the direction of furnishing relief as against overwhelming debts which would deprive the farmer of his means of livelihood. The act defines a farmer, subdivision (r) of section 75 (11 USCA § 203 (r), as being "any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations. * * *" As I read the definition, in the light of the apparent intent of Congress, it is that the individual in all cases must be engaged "primarily" in farming operations; and that the additional clause "or the principal part of whose income is derived from farming operations," was inserted as a precaution against a bona fide farmer being otherwise classed, where, for instance, during bad years and when the farm returns are less than the cost of operation, and the farmer is obliged temporarily to engage in some other occupation to earn a livelihood, he is not to be deprived of his true character and so denied the benefits of the act. To illustrate the contrary: Suppose a man with a city merchandising business has five acres of land on which he does not live and which produces some sort of fruit or other soil products, and happens to find that his merchandising business in stress of poor times does not yield a profit and, nevertheless, receives a profitable return from the fruit on the land. Can it be thought that he should be rated as a farmer and entitled to the benefit of the provisions of section 75? The answer, of course, must be, "No."

Take the case in hand: The referee heard testimony covering income and outlay of the debtor for the years 1932, 1933, and 1934. That testimony showed a gross return from the citrus fruit of $8,927.30, or, after deducting all costs of upkeep, a net loss of $822.61. For the same years the income from the dental practice of the debtor was $4,933, with a loss of $107. The income from an interest in an oil well was $1,980; from rentals of real property located in Los Angeles county, $1,080. As noted, the total gross income from the ranch for three years was $8,927.30. The total gross income from the dental business and sources other than the ranch property was $7,993. The scheduled value of the city property is $27,200, as against a scheduled value for the ranch property of $15,000. There are mortgage liens against the city property in an amount in excess of $9,800.

The debtor has never personally lived on the ranch property, but has lived on a town lot in a suburban city. He is a professional man by occupation, regularly following the business of a dentist. The cultivation of the forty-acre ranch is and has been without doubt a mere incident with other business ventures of the bankrupt, to the following of his professional calling. The mere fact that the gross amount of income from the ranch property during the past three years happens to be a few hundred dollars in excess of the income of the debtor from other sources does not, to my mind, determine the question at all. A man under the definition must be primarily a farmer. Here he is primarily a dentist, regularly working at a regularly kept office, in that profession. To allow him to come in under subdivision (s) of section 75 and subject creditors and mortgagees of property not concerned with the fruit growing acreage, to the restrictive provisions of subdivision (s), would be most unfair, and not contemplated by the act in question.

There have been a few decisions, mostly from the District Courts, interpreting the meaning of the definition of a farmer as used in section 75. Judge Norcross in the case of In re Palma Bros. (D. C.) 8 F. Supp. 920, held that persons primarily engaged in raising sheep with ranch properties necessarily incident were not farmers within the meaning of the act. Judge Dewey of the District Court for the Southern District of Iowa, in the case of In re McMurray, 8 F. Supp. 449, said that land consisting of six city lots in a city did not constitute a farm. Judge Hincks, District Judge of the District of Connecticut, held that a debtor who has six acres of land and uses about an acre upon which to raise vegetables and keep

**950**

poultry, using most of the products, chickens, and eggs in a roadside restaurant and disposing of the rest at a stand, was not engaged "primarily in farming operations." In re Knight (D. C.) 9 F. Supp. 502.

I am not intending in this case to hold that the petition as first filed before the conciliation commissioner was accompanied with bad faith sufficient to justify an order of dismissal on that ground. It is plain to me, however, that where a person initiates a proceeding before a conciliation commissioner, and without submitting in good faith an offer of composition to his creditors, but amends his petition under subdivision (s), his proceeding must be forthwith dismissed. Because it is only after such an offer has been made and rejected by the creditors that he is authorized to amend under subdivision (s). In a proper case, where an offer is submitted of a kind which shows that it is only done to perfunctorily satisfy the conditions of the act, with no expectation that the creditors can in justice to themselves give any consideration to it, it will be the duty of the court to refuse to allow a proceeding to be maintained under the further provisions of subdivision (s).

The language of the farm act, as it is incorporated in the bankruptcy law with its amendment (s), presents great difficulty in its interpretation and application. If in the definition of a "farmer" the lawmakers had stopped when they declared that a "farmer" was one who "is personally bona fide engaged primarily in farming operations," the courts would have little difficulty in the matter of interpretation. The additional words, separated by the disjunctive "or," inject cause for debate. The best that a court can do in such circumstances is to attempt to ascertain the real purpose of Congress and follow that intent.

Before subdivision (s) was added to section 75, it was made clear by subdivision (p), 11 USCA § 203 (p), that lienholders might, unless restrained by the court, proceed to secure satisfaction of lien indebtedness as against all property other than that used in farming operations. The amendment, subdivision (s), providing for an adjudication of the petitioning farmer as a bankrupt, seems to require that all of his property, whether used in farming or not, should be brought under administration. I felt compelled to so hold as against a lien petitioner who asked for the right to foreclose, in the case of Edna R. Storey, 9 F.

Supp. 858. I reached the conclusion reluctantly, as I felt that the intent and spirit of the legislation was removed from any such conclusion. Courts cannot, however, depart from plainly expressed wording of a law, even though it is apparent that the intent was otherwise. It is only when the wording of an act is of doubtful import that the Congressional history may be looked to as an aid in interpreting a statute. It is regrettable that we have had no decisions up to this date by the Supreme Court of the United States or the Circuit Courts of Appeals to furnish a rule by which the trial courts may be guided. The case in hand is one suited for use in obtaining an interpretation by the Court of Appeals. I am hopeful that counsel for petitioner will take the matter there.

The order is that the petition of the petitioner for relief under subdivision (s) of section 75 of the Bankruptcy Act be, and it is, dismissed, with an exception noted.