## In re WILKINSON.
### No. 27327.

District Court, E. D. New York.
March 6, 1935.

Bishop & O'Keeffe, of Riverhead, N. Y., for creditor.

Wells R. Ritch, of Port Jefferson, N. Y., for petitioning debtor.

BYERS, District Judge.

This is a motion for an order dismissing the petition filed by the above named debtor under section 75 of the Bankruptcy Act (11 USCA § 203), made by Riverhead Production Credit Corporation, the holder of a chattel mortgage dated April 6, 1934, which has filed a petition praying that an order be issued dismissing the debtor's petition on the ground that the debtor is not a farmer within the meaning of the said section of the act; or, in the alternative, permitting the petitioner to take possession of and sell under the terms of the chattel mortgage all of the debtor's laying hens and cockerels said to be covered by the said chattel mortgage.

The principal question is whether the debtor is a farmer within the contemplation of the law.

The question raised is serious enough to require careful consideration because in this district there are a great many persons engaged in raising poultry who classify themselves as farmers and, if the statute is not available to them, the reason for that conclusion should be made clearly to appear.

Section 75 has to do with agricultural compositions and extensions and provides that a farmer may file a petition stating that he is insolvent or unable to meet his debts as they mature, and that it is desirable to effect a composition or an extension of time to pay his debts. Each petition is to be accompanied by a schedule.

Subdivision (r), § 75 (11 USCA § 203 (r) provides: "For the purpose of this section and section 74 [section 202], the term 'farmer' means any individual who is personally bona fide engaged primarily in farming operations or the principal part of whose income is derived from farming operations * * *."

The debtor is the owner of twenty acres of land at Lake Grove, Suffolk county, N. Y., upon which are erected his dwelling house, barn, roadside stand and eight chicken houses, and about 5,000 chickens are being raised upon the property; the debtor is engaged in conducting the business of raising and selling said chicks and chickens and of selling eggs, and has been continuously so engaged for ten or more years last past; during half of each year the chickens wander over a portion of the premises and secure a part of their sustenance therefrom, and the debtor has raised upon four or five acres of the said premises rye, oats, cabbage, spinach, etc.

The petitioner swears: That the said chicks or chickens during the said months of the year receive approximately 25% of their sustenance from the premises. Each year for a number of years past, deponent has raised crops of a similar nature for his chickens upon the said premises. That the only purpose for which deponent uses the said premises is as a chicken farm as aforesaid. That all of deponent's income is derived from the said farming operations.

On the argument the objecting creditor stated that there is no issue of fact to be contested, and that the statements made by the debtor concerning the operation of his property should be deemed to be true for the purpose of the motion.

The proceedings under section 75 are voluntary because the relief is sought either through the filing of a petition by the debtor or by an answer interposed by him to a petition in bankruptcy. For this reason it would seem that decisions under section 4 of the act (11 USCA § 22) which deny to a petitioning creditor the right to maintain involuntary proceedings against an insolvent "person engaged chiefly in farming or the tillage of the soil" would not be controlling on the question of whether a man is a farmer within section 75. A farmer may become a voluntary bankrupt, and it would seem to follow that one who may be fairly classified as such may file a petition under the latter section.

Section 75, subd. (s) of the act (11 USCA § 203 (s), provides: "Any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition or extension proposal, or if he feels aggrieved by the composition or extension, may amend his petition or answer asking to be adjudged a bankrupt. * * *"

It is apparent, of course, that Congress had in mind certain special considerations which it thought should be extended to farmers; otherwise section 75 would not have been enacted, and debtors conducting farms would have been expected to take advantage of section 74 (11 USCA § 202), and consequently it cannot be said that any one who calls himself a farmer is automatically entitled to file under section 75.

On the other hand, it is thought to be equally clear that, in determining the status of a petitioner, it is not necessary to be governed by the decisions made under section 4 which in many cases have resulted in dismissing involuntary petitions against those whose creditors have thought they were not within the scope of that section.

In other words, if Congress had intended that only those who till the soil may file under section 75, it would have been easy to say so in plain terms.

This view may be mistaken, for it is opposed to a decision rendered by the District Court of Nevada in Re Palma Bros., 8 F. Supp. 920, 921; there a petition under section 75 was dismissed on the ground that the petitioner engaged in raising sheep was not a farmer. The opinion states: "It is clear not only from the debtor's petition but also from the testimony adduced upon the hearing that the principal source of income of debtors is derived from the sheep, particularly the annual product thereof of wool and lambs. The ranch properties of the debtors are in the main and practically entirely a necessary incident to the sheep business." The authorities cited are all decisions under section 4.

See, also, In re McMurray (D. C.) 8 F. Supp. 449, at page 454, where one who operates "six city lots in the city of Albia" is not a farmer in the parlance of Iowa.

Upon the theory that the view here taken may be mistaken and that one whose calling is as described in this petition cannot maintain this proceeding if the cases relied upon as justifying the decision in the

Palma Case are controlling, reference will be made to some of them:

In re Spengler (D. C.) 238 F. 862: An involuntary bankruptcy proceeding. Adjudication was ordered on the theory that the alleged bankrupt was not a farmer because he farmed only about two acres and bought hogs and feed for them and sold them. His outside activities were considered, and it was found that he was engaged in general business.

In the present case, there is no outside activity involved.

In re Dwyer (C. C. A.) 184 F. 880, 882: This alleged bankrupt raised crops and also bought feed for cattle and hogs on his farm which later he sold. The court held that he was not a dealer in live stock but was essentially a farmer, and the opinion concludes with the words "that conducting a 'stock farm,' as well as conducting a 'grain farm,' is farming," and that the alleged bankrupt was chiefly engaged in farming, and consequently the petition should have been dismissed under section 4.

There would seem to be no difference in principle between a stock farm and a poultry farm.

Bank of Dearborn v. Matney (D. C.) 132 F. 75: An involuntary petition was sustained for the reason that the alleged bankrupt was chiefly engaged in trading in cattle which he fed. The debts involved were mostly contracted in the purchase of feed. The court says that the great bulk of the indebtedness was for moneys borrowed for cattle speculation.

In re Brown (D. C.) 284 F. 899: Involuntary petition sustained upon a showing that the alleged bankrupt had very considerable business interests running into many hundreds of thousands of dollars and his financial difficulties were held to have arisen from the grain and milling business and from his real estate speculation.

Hart-Parr Co. v. Barkley (C. C. A.) 231 F. 913: This is one of the leading cases cited for the proposition that the words "farming" and "tillage of the soil" mean the same thing. The alleged bankrupt, Tuxhorn, was engaged in threshing for others for hire, and was therefore held not to be chiefly engaged in farming or tillage of the soil.

In re Stubbs (D. C.) 281 F. 568, 571: A ranchman who raised live stock for market was held not to be a farmer and therefore an adjudication against him as an involuntary bankrupt was ordered. The court adopted the construction that tillage of the soil is the same thing as farming, and the alleged bankrupt was not so engaged. The opinion contains this interesting comment: "Another circumstance which is impelling to the court in arriving at this conclusion is that in this particular region there is a sharp distinction recognized between the occupation known as 'ranching' and that known as 'farming.'" The understanding of "farming" which is current in New York will be hereinafter discussed.

Swift v. Mobley (C. C. A.) 28 F. (2d) 610: An adjudication in involuntary bankruptcy was upheld upon the ground that the alleged bankrupt was not actively engaged in any occupation. The court says, in part: "The raising of chickens about his home place was on too small a scale to constitute an occupation or means of living, as was also the farming by his tenant." This language would be quite consistent with the view that, if the occupation had been on a large scale and constituted the alleged bankrupt's prosecution of a calling, a different result might have followed.

In re Brown (C. C. A.) 253 F. 357: An involuntary adjudication was upheld on appeal because the alleged bankrupt contracted the larger part of his indebtedness in connection with business other than farming. There were outside activities involved and the evidence indicated that the alleged bankrupt's principal interest at the farm was in developing the business of his packing house, creamery, and poultry yards, and in purchasing live stock and poultry from others, and selling directly to consumers the products of his plants.

Gregg v. Mitchell (C. C. A.) 166 F. 725, 20 L. R. A. (N. S.) 148, 16 Ann. Cas. 510: An adjudication of involuntary bankruptcy in the District Court was reversed by the Circuit Court of Appeals because the alleged bankrupt was held to be chiefly engaged in farming. In connection with his large farm, he kept cattle and sold milk at retail in Columbus, Ohio, and the products of his farm yielded a larger income than the sale of milk. The latter was held to be an incident of farming, and he was held not to be more of a dairyman than a farmer.

In re Thompson (D. C.) 102 F. 287, 289: An involuntary petition was dismissed against one who raised cattle for the market upon his farm and fed the cattle in part

from the product of his farm and in part from feed that he bought from others. The opinion says in part: "The business of farming includes the fattening of cattle and hogs for the market from the products of the farm, and but one conclusion can be drawn from the facts of this case, and that is that during the years 1897, 1898, and 1899 the defendant was engaged chiefly in the business of farming * * *."

In re Macklem (D. C.) 22 F.(2d) 426: The facts are stated in detail and lead to the conclusion by the court that the alleged bankrupt was principally engaged in the canning industry, hence an involuntary adjudication was ordered. The opinion contains a helpful discussion.

While these cases—none of which was decided in this circuit—do not lend themselves to convenient classification, it is apparent that in many of them the decision was controlled by the nature and extent of outside activities which were not directly involved in farm operation.

In others the courts consider that farming means tillage of the soil.

This decision will proceed upon the theory that, in this part of the country, the term has come to possess a wider meaning. It is thought that such a view is permissible in the absence of controlling decisions to the contrary.

But one case has been found which discusses the nature of the calling involved in the raising of poultry: Fleckles v. Hille, 83 Ind. App. 715, 149 N. E. 915. Here the court was construing the Workmen's Compensation Statute of Indiana in deciding whether an employee on a poultry farm came within the statute, which seems to have excluded, in terms, farm or agricultural employees. The court says that "farm employee" and "agricultural employee" have substantially the same meaning, but, if there is any difference, the latter includes the former and has a broader meaning. It seems appropriate to quote the following language:

"The term 'agriculture' is defined as the art or science of cultivating the soil, including the planting of seed, the harvesting of crops, and the raising, feeding and management of live stock or poultry. See Webster's Dictionary; 2 C. J. 988; 28 R. C. L. 718; Coleman v. Bartholomew (1916) 175 App. Div. 122, 161 N. Y. S. 560; Simons v. Lovell (1871) 7 Heisk. (Tenn.) 510, 516. In this state, it is a matter of common knowledge that poultry production by Indiana farmers is well nigh universal, though carried on more extensively by some than by others. The fact that appellants in the operation of the farm specialized in the production of poultry, did not, under the facts of this case, take them or their employees out of the agricultural class. In the conduct of the farm, they were agriculturists, and since appellee at the time he received the injury was performing labor incident to the farm enterprise, he was an agricultural employee within the meaning of section 9, supra. Davis v. Industrial Commission, supra [59 Utah, 607, 206 P. 267]. Reversed."

The foregoing seems somewhat to reflect current notions in the state of New York on the subject of poultry farming; for instance, in the Agriculture and Markets Law of the state of New York (Consol. Laws, c. 69), in section 245, the following appears: "1. The term 'farm products' shall include all agricultural, horticultural, floricultural, vegetable, and fruit products of the soil, livestock and meats, poultry, eggs, dairy products, nuts, honey, wool and hides; but shall not include grains or timber products."

The above statutory definition is consistent only with the thought that eggs and poultry are the products of a farm and therefore one who conducts a poultry farm is a farmer.

It is interesting to observe that the objection here made proceeds from a farm aid agency; that is to say, the objecting creditor is an agency established to make loans to farmers, and the applicable statutory definition is as follows (12 U. S. C. § 1016, subd. (f), 12 USCA § 1016 (f): "(f) 'Farmer' Defined. As used in this section, the term 'farmer' means any individual who is bona fide engaged in farming operations, either personally or through an agent or tenant, or the principal part of whose income is derived from farming operations, and includes a personal representative of a deceased farmer."

The Legislature of the state of New York enacted a statute to provide for the giving and filing of chattel mortgages by farmers and live stock raisers, to secure loans from federal and other agencies. See Laws 1934, c. 659, in effect May 15, 1934.

Such is the mortgage given by this debtor to the Riverhead Production Credit As-

sociation, which is described in the document as a corporation organized, operating and existing by virtue of the act of Congress known as the Farm Credit Act of 1933. (12 USCA § 1131 et seq.).

It is clear therefore that the mortgagee, which was created pursuant to the provisions of the Farm Credit Act of 1933 and which made this loan to the mortgagor because he was a farmer, can scarcely be thought to be in a position now to urge that he is not a farmer within the contemplation of section 75 of the Bankruptcy Act, although the motion is not disposed of on the theory of estoppel.

It is concluded that the debtor is an individual personally engaged primarily in farming operations within the statutory definition of section 75 of the Bankruptcy Act, and that the motion to dismiss his petition must be denied.

The alternative relief sought by the mortgagee, namely, that it be permitted to take possession of the mortgaged property, cannot be disposed of as part of the motion to dismiss the petition. If such relief is to be sought, it will have to be considered after the conciliation commissioner has made his report, and the matter is separately presented in such guise as to enable the court to determine whether a governmental agency, being a secured creditor, stands in any more favored light than a private lender holding the ostensible security of a mortgage, where a farm loan is involved.

Motion denied.

Settle order.