**In re REICHERT.**
No. 1702.

District Court, W. D. Kentucky.
Jan. 9, 1936.

N. P. Taylor, of Henderson, Ky., for bankrupt.

Pentecost & Dorsey, of Henderson, Ky., for trustee.

A. D. Kirk, of Owensboro, Ky., for creditors.

Armand L. Koethen, of Louisville, Ky., for Federal Land Bank.

HAMILTON, District Judge.

This matter is pending before the court on the motion of the Farmers Bank & Trust Company, trustee in bankruptcy of the above-named bankrupt in a former proceeding, and of Mrs. Tommie R. King and Marion D. Eblen, receiver of Henderson National Bank, creditors, to dismiss this action, and on the exceptions of the Farmers Bank & Trust Company, trustee, to the report of the conciliation commissioner. The motion to dismiss is based on the alleged unconstitutionality of Public Act No. 384,

74th Congress, 49 Stat. 942, 11 U.S.C.A. § 203, entitled, "An Act to amend an Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States,' approved July 1, 1898, and Acts amendatory thereof and supplementary thereto."

The exceptions relate to certain acts of the conciliation commissioner in the administration of the estate.

On January 25, 1934, the bankrupt in this action filed a voluntary petition under section 22 of the act before amendment (47 Stat. 47) and on his adjudication, the Farmers Bank & Trust Company of Henderson, Ky., was duly appointed trustee and qualified as such, and took charge of his estate. The bankrupt was discharged on March 22, 1934.

In the original proceedings, No. 1597, the liabilities of the bankrupt amounted to $44,596.37, as scheduled, and assets of $39,368.82. Among the assets were seven farms, all in lien to various creditors. There were also included three pieces of city real estate. The trustee under the orders of the court has, since it took possession of the property, continued to manage and operate the farms without a sale thereof. On December 27, 1934, the bankrupt, together with the Federal Land Bank of Louisville, Ky., filed a petition with the referee in bankruptcy in proceeding No. 1597 praying the court that it authorize and direct the trustee to release, relinquish, and quitclaim to the bankrupt one of the farms (referred to as the Bass farm), scheduled in his assets, comprising 332 acres, in consideration of the bankrupt assuming to pay the lien indebtedness to the Land Bank of the sum of $10,031.47, together with 6 per cent. interest thereon from January 1, 1934, and the assumption by the bankrupt of taxes due on the farm for the years 1933 and 1934.

The farm was appraised at the time of the filing of the petition at $9,960, which was less than the indebtedness. Pursuant to the petitions of the bankrupt and his creditor, the referee on January 12, 1935, entered an order directing the trustee to release, relinquish, and quitclaim his interest in the Bass farm to the bankrupt, and the Federal Land Bank agreed, as a party to this transaction, to release and relinquish any claim it had against the trustee on account of its mortgage indebtedness secured by a lien on the Bass farm. Thereupon, the bankrupt took possession of said farm, and

ever since that date has continued in the full use thereof.

On September 14, 1935, the former bankrupt, William A. Reichert, filed in this court this action, No. 1702, a petition under section 75 of the Bankruptcy Act as amended by the Act of the 74th Congress approved August 28, 1935, and set out therein that he was the operator of a farm containing 330 acres in Henderson county, Ky., within this judicial district, and that he desired to effect an extension of time within which to pay his debts as permitted under the act. He attached to his petition, as a part thereof, a schedule of all of his alleged debts and an inventory of his assets. The only liabilities listed were the indebtedness to the Federal Land Bank of Louisville, Ky., in the amount of $10,864.01, secured by lien on the land that he had acquired from his trustee in the former proceedings, a claim for taxes of $102.37 to the county of Henderson and the commonwealth of Kentucky, and thirteen unsecured creditors ranging in amount from $5 to $252, aggregating $859.59. He listed as assets the farm above referred to, valued at $10,000, personal property of $10, and growing crops, $1,000. He made no reference in his petition to a former adjudication in bankruptcy.

On the filing of the petition, an order was entered referring the matter to the conciliation commissioner. The commissioner recommended that the proceedings under the original Bankruptcy Act, § 75, in so far as they related to the Bass farm, be discontinued, and all proceedings in relation thereto be in this action. The bankrupt filed with the conciliation commissioner an inventory of his property, which was substantially the same as that filed in his original schedule, and also requested the commissioner to determine his equity in and to the proceeds of the sale of the crops and the profits of the Bass farm for the years 1932 to and including 1934, then in the hands of his trustee. He also prayed that his trustee in the first proceeding be compelled to pay to the commissioner $2,563.42, the alleged proceeds from the sale of the crops of the Bass farm for the years referred to.

The Federal Land Bank of Louisville, Ky., had, on September 17, 1935, instituted foreclosure proceedings in the Henderson circuit court on the Bass farm, and the bankrupt prayed that this court issue an injunction to restrain further proceedings in said action.

On October 14, 1935, the conciliation commissioner filed a report in this action, in which he recommended: (1) That the debtor's former bankruptcy proceeding be closed as of September 14, 1935, on the filing of this action; (2) that all of the debtor's estate not administered, and all assets in the hands of the trustee, the Farmers Bank & Trust Company, not liquidated, be transferred to the jurisdiction of the court in this action and the future administration thereof be under the supervision of the conciliation commissioner; (3) that each and every act of the administration of the debtor's estate under the former proceedings done after September 14, 1935, at 8:35 o'clock a. m., be set aside and held for naught; (4) that amended schedule theretofore filed by the bankrupt with the conciliation commissioner, which included the assets in the hands of the trustee in the first action, be accepted and filed, and the two proceedings be consolidated.

The bankrupt filed with the conciliation commissioner an amended schedule in which he listed all the real estate scheduled in the original proceedings, and which was still in the possession of the trustee. With his amended schedule he filed a motion asking the court to enter an order directing the return to him of all the real estate at that time in the possession of the trustee, and all the rents and profits realized therefrom by the trustee.

On the filing of these papers with the conciliation commissioner, he filed with the court in this action a motion requesting the court to enter an order requiring the trustee, Farmers Bank & Trust Company, to render forthwith a complete report of its administration of the debtor's estate to September 14, 1935. The exceptors object to the consolidation of the former bankruptcy proceedings with this action, and also to any part of the proceeds realized from the Bass farm subsequent to the filing of the original petition in bankruptcy and the date of its transfer to the bankrupt, being paid to him or to the Federal Land Bank or to the conciliation commissioner.

If the act under which these proceedings were had is unconstitutional, all other questions raised become immaterial. I will, therefore, determine the constitutional question first.

The original amendment to the act was held void by the Supreme Court in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 865, 79 L.Ed.

1593, 97 A.L.R. 1106. Immediately on this decision the Congress sought to meet the constitutional barriers to the original act, and as a result thereof the act was amended, under which these proceedings are had. The original act provided that upon failure of the farmer to agree with his creditors on a composition of his debts, or an extension of time within which to pay them, he might petition the court to be adjudged a bankrupt, in which event all proceedings against him or his property by his creditors were stayed, his property appraised, and he permitted to buy all or any part of it free from the claims of his creditors, provided he agreed to pay the appraised value as determined by appraisers appointed by the court; the purchase price payable in six annual installments, with interest at the rate of 1 per cent. per annum.

The farmer retained possession of the property during the period of installment payments. If secured creditors affected by this plan objected to the partial payment, the court then was required to stay all proceedings for a period of five years, allowing the farmer to retain possession of his property on the payment of a reasonable rent determined by the court. During the 5-year period, the farmer might buy his property by paying its appraised value in cash. The original act, in addition to providing for a moratorium upon the enforcement of farm mortgages for five years, gave the mortgagor the exclusive right to purchase the property at a time and price fixed by the court, without requiring a judicial sale and affording the mortgagee an opportunity to bid.

The Supreme Court in the Radford Case decided that article 1, § 8 of the Constitution, authorizing the Congress to establish uniform laws on the subject of bankruptcies, was restricted by the Fifth Amendment, and that the following property rights were conferred under the laws of Kentucky:

"(1) The right to retain the lien until the indebtedness thereby secured is paid.

"(2) The right to realize upon the security by a judicial public sale.

"(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

"(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

"(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt."

The court held that the act invaded these rights and was, therefore void.

Under the amendment, the farmer must have proceeded unsuccessfully under section 75 (a to r) of the old act (47 Stat. 1470) before invoking the provisions of subsection (s) of the amended act 11 U.S.C.A. § 203 (s); that is to say, he must have failed to procure the assent of a majority in number and amount of the claims against him to composition or an extension proposal, or "feel aggrieved" by such a proposal which has been accepted. When these facts are shown, the farmer may then file his petition under the amended act, subsection (s), asking that he be adjudged a bankrupt and allowed the benefits of this subsection.

All of the property of the debtor is then appraised at its reasonable, fair market value, with the right in either debtor or creditor to file exceptions to the value thus determined within four months from the date of the approval of the appraisal by the referee. After the value of the debtor's property has been determined by appraisal, the referee is to set aside to the farmer his "unencumbered exemptions," and all of the remainder of the property of the debtor is to remain in his possession under the supervision and control of the court, "subject to all existing mortgages, liens, pledges or encumbrances."

After these things are done, if the court concludes the proceedings are in good faith and it is made to reasonably appear that a debt liquidation may be effected, the court may direct a stay of all proceedings against the debtor or his property for a period of three years, conditioned on the farmer paying semiannually a reasonable rental to be fixed by the court for such of his property as he retains in his possession. The rental to be paid as defined in the act is "the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property," (11 U.S.C.A. § 203 (s) (2) and when paid shall be first applied by the court upon taxes and upkeep of the property; the remainder, if any,

to be paid to lien creditors and unsecured creditors as their interest may appear. The first rental payment is not due until one year from the date of the order of the court staying proceedings, and thereafter shall be paid every six months.

In addition to rental payments, the court, in its discretion, may require quarterly, semiannual, or annual payments on the principal, "not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation." 11 U.S.C.A. § 203 (s) (2). The court may also, in its discretion, order sold at public or private sale any nonexempt personal property which is (a) perishable, or (b) not reasonably necessary for the farming operations of the debtor, if the court concludes such a sale necessary to protect the creditors from loss or to conserve the security.

At the end of the 3 years' extension period, or at any time prior thereto, the farm debtor may purchase the property retained in his possession free and clear of claims of his creditors by paying into court the amount of the appraised value of the property, credited by any amount which has theretofore been paid on the principal. This right to purchase is subject to the following limitations:

(1) Any creditor, or the debtor himself, may demand a reappraisal of the property at the date of the proposed purchase, in which event new appraisers are to be appointed by the court, or the court may hear evidence and fix the value of the property. The debtor is then required, before obtaining the property, to pay the value thereof as determined either by the new appraisement or the value as fixed by the court.

(2) Any secured creditor, upon written request to the court, may demand that the property upon which he has a lien be sold at public auction, and if sold the debtor is accorded the right to redeem the property at any time within 90 days after the sale by the payment of the sale price, together with 5 per cent. interest thereon. After full compliance with the provisions of the act and all orders issued by the court in the course of proceedings, the farmer is granted a discharge.

If he fails to comply with any order of the court pursuant to the provisions of the act or is unable to refinance himself within 3 years, the court may appoint a trustee and order the property sold or otherwise disposed of as provided under the original Bankruptcy Act.

Section 6, subd. 5 (11 U.S.C.A. § 203 (s) (5) of the act provides that all cases filed under the act before its amendment, and dismissed because of the decision of the Supreme Court in the Radford Case, shall be reinstated without the payment of additional filing fees, and, also, that "a previous discharge of the debtor under any other section of this Act shall not be grounds for denying him the benefits of this section."

■ Under the amended act, the exclusive right of the debtor to purchase the mortgaged property at its appraised value is taken away. The mortgagee can require a public sale to the highest and best bidder, and of course has the right to protect himself by bidding at the sale. His lien is preserved until the pledged property has been sold and the proceeds used to discharge the lien debt. The amended act, when fairly construed, conditionally extends the period of sale to enforce the lien 3 years, with 90 days added as a period of redemption to the debtor. Within the 3-year period, the debtor, if he retains the possession of the property, must pay the fair rental value thereof, and in addition thereto may be required to make payments on the principal; the latter, however, not to be inconsistent with the protection of the rights of the creditors and the debtor's ability to pay with a view to his financial rehabilitation.

■■ If any provision of this act is susceptible to two constructions, one sustaining its constitutionality and the other defeating it, the first must be adopted. Section 6 (3), 11 U.S.C.A. § 203 (s) (3) authorizes the court to appoint a trustee and order the disposition of the property if it appear that the debtor will be unable to refinance himself within the 3 years' extension, and while this provision of the act may be susceptible to the construction that it has no application until the expiration of the 3-year period, it can also be construed to mean that the court could act at any time if the facts brought it within this provision.

■ Also under the provisions of section 75 (a–r) the farmer is first required to proceed before he can invoke subsection (s), and under this section the composition or extension proposal must have been made in good faith.

If the settlement proposed did not contemplate a liquidation of the indebtedness it would not be in good faith and foreclosure proceedings would not be prohibited at the very inception of the proceedings. In re Borgelt (C.C.A.7th) 79 F.(2d) 929, November 23, 1935; In re Hilliker (D.C.) 9 F.Supp. 948; In re Samuelson (D.C.) 8 F.Supp. 473.

■ It follows that the court is not authorized to grant the 3-year extension unless it is made to reasonably appear that the lien creditor will not suffer any substantial loss in the value of his security by reason of the delay. The original purpose of Acts of Bankruptcy was to bring about a prompt, equal disposition of the debtor's property among his creditors, and to relieve the debtor of obligations and responsibilities following a business misfortune, and to permit him to start afresh. However, with the change in the condition of the relationship of debtors and creditors, the scope of original acts has been extended to persons, properties, and different debtor contracts.

■ Bankruptcy was thought to be of such importance when the Constitution was drafted as to authorize the Congress to legislate on the subject; the only restriction being that its laws were to be uniform throughout the Union. Louisville Joint Stock Land Bank v. Radford, supra; Hanover National Bank v. Moyses, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113.

Section 77 of the Bankruptcy Act (see 11 U.S.C.A. § 205), providing for railroad reorganization, invades the rights of creditors to a much greater-extent than does the act here in question. The Supreme Court sustained that act in Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110, and section 77B (see 11 U.S.C.A. § 207), providing for corporate reorganization, invades the rights of creditors more drastically than the act here. That section has been sustained as constitutional. In re Sterba (C.C.A.) 74 F.(2d) 413; In re New Rochelle Coal & Lumber Co. (C.C.A.) 77 F.(2d) 881; Grand Boulevard Investment Company v. Strauss (C.C.A.) 78 F.(2d) 180.

It may be said that the long period of recognized equity receiverships applicable to both railroads and corporations which postponed the payment of debts of such corporations distinguishes sections 77 and 77B from the act here in question, but

when we are dealing with the exercise of the constitutional power, it would seem that if the Congress can confer on the bankruptcy courts the power theretofore exercised by courts of equity corporate receiverships, a fortiori it may constitutionally confer on bankruptcy courts for farmers the same power as conferred for corporation.

■ The act under consideration is not in its terms essentially different from the Minnesota Moratorium Law (Laws 1933, c. 339), which was sustained by the Supreme Court in the case of Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. The Minnesota act may be said to have been sustained as a valid exercise of the police power of the state, justified by an emergency, and that Congress has no such power; but in answer to this, the Congress may exercise its constitutional powers for any purpose for which a state may exercise its powers.

Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A. (N.S.) 906, Ann.Cas. 1913E, 905; Buttfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525; Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764; Seven Cases v. United States, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168; Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407; Weber v. Freed, 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308, Ann.Cas. 1916C, 317; Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Board of Trustees of University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025; Block v. Hirsch, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165.

In Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Railway Co., supra, the court said: "The fundamental and radically progressive nature of these extensions becomes apparent upon their mere statement; but all have been judicially approved or accepted as falling within the power conferred by the bankruptcy clause of the Constitution. Taken altogether, they demonstrate in a very striking way the capacity of the bankruptcy clause to meet new conditions as they have been disclosed as a result of the tremendous growth of business and development of human activities from 1800 to

the present day. And these acts, far-reaching though they be, have not gone beyond the limit of congressional power; but rather have constituted extensions into a field whose boundaries may not yet be fully revealed."

I have concluded that the act is constitutional, construed as heretofore stated.

In regard to the effect this action has on the former bankruptcy proceedings, subsection (5) of section 6 of the act, 11 U.S.C.A. § 203 (s) 5, provides that it shall apply to all existing cases now pending in any federal court, also to future cases and to cases that have been dismissed by a conciliation commissioner, referee, or court because of the Supreme Court decision holding the former subsection (s) unconstitutional. It also is provided that any farm debtor who has filed under the General Bankruptcy Act (11 U.S.C.A. § 1 et seq.) may take advantage of this section upon a written request to the court; and a previous discharge of the debtor under any other section of this act shall not be grounds for denying him the benefits of this section.

In ordinary bankruptcy proceedings the trustee, by operation of law, is vested with the title to all of the bankrupt's property as of the date of adjudication, and before the act here in question became a law the bankrupt was completely divested of all right, title, and interest to the property passing to the trustee in the former proceedings.

He had no right of redemption in any part of it; it was gone from him forever. If the part of the act above referred to were construed to authorize setting aside the title heretofore vested in the bankrupt's trustee, it would deprive the creditor of the bankrupt of vested rights and violate the Fifth Amendment. Holt v. Henley, 232 U.S. 637, 639, 34 S.Ct. 459, 58 L.Ed. 767; In re Inland Dredging Corporation (Ex parte Globe Indemnity Company), 61 F. (2d) 765, 88 A.L.R. 254 (C.C.A.); In re C. H. Earle, Inc. (D.C.) 2 F.Supp. 15, affirmed without an opinion in (C.C.A.) 65 F.(2d) 1013; City of Chelsea v. Dolan (C. C.A.) 24 F.(2d) 522; In re John G. Gasteiger & Co. (C.C.A.) 25 F.(2d) 642; Louisville Woolen Mills v. Johnson (C.C. A.) 228 F. 606. This part of the act means that cases filed under subsection (s) of the old act and dismissed as the result of the decision of the Supreme Court in the Rad-

ford Case may be reinstated, and that a farm debtor, notwithstanding the fact he had theretofore filed an action under the General Bankruptcy Act and had been discharged, could again file under the amended act, although heretofore prohibited from doing so by the provisions of section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32.

It, therefore, follows that the conciliation commissioner was in error in ordering a consolidation of the old proceeding, action No. 1597, with this action, No. 1702, and the exceptions filed by the trustee and creditor will be sustained.

This action will proceed only as to the assets acquired by the bankrupt subsequent to his discharge in the former proceeding.