## UNITED STATES v. McCANN et al.

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 309.

George N. Jesse and John A. Bolles, both of New York City (Edwin L. La Crosse, of New York City, of counsel), for appellant Whitaker.

Benjamin F. Fanger, of New York City (Albert Henry Aronson, of New York City, and H. Lawrence Jessop, of New York City, of counsel), for appellant McCann.

Charles H. Tuttle, U. S. Atty., of New York City (Owen S. M. Tierney, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This is an appeal from a judgment of conviction, after indictment charging crimes under sections 215 and 37 of the United States Criminal Code (18 USCA §§ 88, 338). A scheme to defraud and the use of the mails in furtherance thereof was established by the proof of a so-called "front money game." The appellants for more than three years represented, and held themselves out to corporations in search of additional capital as experts in the sale of stock, and by fraudulent and false representations they obtained contracts of employment. In letters and by verbal statements they represented to their victims that they had a large force of capable salesmen and an ever-expanding clientele of stock buyers; also a department which provided facilities for extensive circularization, and had in-

side information as to sources of funds available and awaiting investment. These representations were established to be misleading and intended to mislead the victims, as a result of which the appellants secured large sums of money in advance for services, and did not perform and never intended to perform their promises or contract obligations. The evidence established, to the satisfaction of the jury, that they induced their victims, mentioned in the indictment, to enter into such contracts for the sale of the corporate stock of the respective corporations because of the reliance placed upon the following representations:

They maintained offices in the city and state of New York under the name of "Commonwealth Securities Company," "Worthington Company," and "W. P. Whitaker." Letterheads bearing the names of these respective concerns were used by them. Thereon it was stated that they had offices in Washington, Baltimore, Pittsburgh, Cleveland, Newark, and Philadelphia, when in fact they had no such branch offices. The letters which were written to the victims represented that they had a large force of capable stock salesmen. At the trial, testimony was offered by 21 victim corporations that they had not sold a share of stock over a period of three years. The appellants had represented that they had investigated the corporations offering the stock for sale "from cellar to dome" and gave a strong personal recommendation. An employee of the Worthington Company testified that there were no books of account or pay roll ever prepared, and an employee of Whitaker testified to the same purport. They did not know of any salesmen employed by either firm. It was established that three female office employees were the only employees of the Worthington Company and Whitaker.

The Commonwealth Securities Company had but one office employee and the representations of a large staff of salesmen were false. They represented, by letters, that they had a large clientele of stock buyers and "would experience no difficulty in promptly selling the stock allotted." This and similar representations were established to be false. One of the victim corporations had substantial business operations and showed large gross profits. It paid the appellants to sell the stock, with the same success as other victims who were trying to dispose of fraudulent stock. The appellants represented that they had a multigraphing department, and this was also established to be false, as was the representation that the appellants would send out large quantities of circulars and documents for advertising and soliciting the purchase of the victims' stock. They did no multigraphing, and it was shown that no one else did multigraphing for them. It was represented that they had an advertising manager and director of sales, when in fact they did not; nor did they expend large funds in furtherance of the sale of the stock of their victims, and fell far short of expending the moneys which they received for their services. Appellants represented that they would expend sums in excess of the amounts paid to them by the victims, and that they would purchase, within 90 days, from the victims, a large number of shares of stock, which they never did, and, contrary to their promise, they failed to do "all in their power to facilitate the marketing of the stock" of the victims.

It was likewise firmly established that they used the mails in furtherance of their scheme to defraud. The female employees testified to signing some of the letters, mentioned in the indictment, with fictitious names, and employees mailed the letters by depositing them in the mail chute in the building where the offices of the concerns were maintained. The letterheads of the company were used and the victims received the letters. This was sufficient proof of mailing the letters. Krotkiewicz v. United States, 19 F. (2d) 421 (6th C. C. A.); Tincher v. United States, 11 F.(2d) 18 (4th C. C. A.); Tresca v. United States, 3 F.(2d) 556 (2d C. C. A.); Brooks v. United States, 146 F. 223 (8th C. C. A.); Demolli v. United States, 144 F. 363, 6 L. R. A. (N. S.) 424, 7 Ann. Cas. 121 (8th C. C. A.); Kellogg v. United States, 126 F. 323 (2d C. C. A.).

The indictment charged operation by each of the appellants under the name of the "Worthington Company," "Commonwealth Securities Company," and "W. P. Whitaker," and there was ample evidence justifying the jury in finding that each of the appellants was connected with the scheme and the fraudulent use of the mails as charged in the respective counts of the indictment. There is a joint responsibility for mailing, not only the letters, the subjects of counts 2 and 4, but the letters of each of the counts of the indictment. It is unnecessary to review the evidence in more detail establishing appellants' connection with the concerns referred to.

Error is assigned, and it is claimed sufficient to reverse the judgment, because the court did not limit the effect of the statement made by J. J. McCann, which was offered in evidence. No objection was made by the ap-

542

pellants, nor was a request made to limit the exhibit, as applying only to the defendant J. J. McCann. J. J. McCann was acquitted. In the absence of some request restricting the use of this exhibit, no reversible error is established. Bryant v. United States, 257 F. 378 (5th C. C. A.); Schonfeld v. United States, 277 F. 934 (2d C. C. A.); Pappas v. United States, 292 F. 982 (9th C. C. A.). Since the passage of section 269 of the United States Judicial Code (28 USCA § 391), the burden is on the appellants to show from the record as a whole that there was denial of a substantial right. Rich v. United States, 271 F. 566 (8th C. C. A.); Armstrong v. United States, 16 F.(2d) 62 (9th C. C. A.). The contents of this exhibit was merely cumulative, and there is ample evidence without it to sustain the statement therein contained as against each of the appellants. Nor was it error to admit the letters containing the signatures of fictitious names, for it was established that these names were signed in the offices of the respective concerns, and the letters were mailed in due course of business from that office.

 It is charged that error was committed in the court's charge wherein it was said: "The court charges, in order to constitute a conspiracy, that two or more of these defendants before you should be found guilty." What the court said must be considered in this connection with the entire charge. Haggerty v. United States, 5 F.(2d) 224 (7th C. C. A.); Horn v. United States, 182 F. 721 (8th C. C. A.). The charge delivered intelligently instructed the jury that it was for them to say whether a scheme to defraud existed and the mails used in furtherance of such scheme; also whether or not a conspiracy was established among the defendants charged in the indictment, or any two of them. The language was indeed beneficial to the appellants, for the reason that, if the jury should have determined that only one of the four defendants on trial was guilty of conspiracy, the verdict necessarily would have been an acquittal of that defendant on the conspiracy charge, and if they could not find two of the defendants on trial guilty of conspiracy, but only one, that defendant, under that portion of the charge referred to, which is now complained of, would not be found guilty of conspiracy. The jury found a general verdict, and the appellants were found guilty on all counts. The charge was not prejudicial. Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407; King v. United States, 25 F.(2d) 242 (6th C. C. A.); Coleman v. United States, 3 F.(2d)

243 (9th C. C. A.); Degnan v. United States, 271 F. 291 (2d C. C. A.).

In Martin v. United States, 17 F.(2d) 82, we reversed a judgment of conviction, where two out of seven indicted jointly for conspiracy were placed on trial, for an instruction given to the jury on a conspiracy count that *both* defendants must, or *neither* could, be found guilty. Here four defendants were placed on trial; five were indicted, and the indictment was severed as to the fifth defendant. In the Martin Case, supra, it was possible to find one of the defendants on trial, with one or more defendants not on trial, guilty of conspiracy, and exonerate one of the defendants on trial. Here more than two of the defendants were on trial, and it was permissible, under the court's charge, to which objection was made, to find any two or more of them guilty, and exonerate the other defendants.

Other errors assigned have been examined, but are without merit.

Judgment affirmed.

SWAN, Circuit Judge (concurring). I am unable to distinguish this case from Martin v. United States (C. C. A.) 17 F.(2d) 82, where a similar charge was stated to be prejudicial error. That was announced without discussion. I cannot see how it can be prejudicial, except on the assumption that the jury will not do its duty; that is, that it will find a conspiracy between two on trial without adequate evidence. I think the Martin Case should be overruled. Therefore I concur.