## UNITED STATES v. F. W. DARBY LUMBER CO. et al.

District Court, S. D. Georgia.

April 29, 1940.

---

[1] No opinion for publication.

Robert L. Stern, Sp. Asst. to Atty. Gen., and J. Saxton Daniel, U. S. Dist. Atty., of Savannah, Ga., for the United States.

Hitch, Denmark & Lovett, of Savannah, Ga. (Archibald B. Lovett, Malberry Smith, Jr., and Robt. M. Hitch, Jr., all of Savannah, Ga., and Fred T. Lanier, of Statesboro, Ga., for defendant.

BARRETT, District Judge.

Subsequent to the able oral arguments and the submission of thorough and exhaustive briefs in this case, the Circuit Court of Appeals of the Fifth Circuit decided the case of Opp Cotton Mills, Inc., v. Administrator Wage and Hour Division Etc., 111 F.2d 23, April 2, 1940.

In the opinion in the Opp case is found this language: "We are of opinion and so hold that the enactment of the Fair Labor Standards Act was a valid ·exercise of the power given to Congress by the commerce clause of the federal constitution".

If such language is all inclusive under all conditions this court is bound by such decision and will cheerfully follow the same. Apparently the Circuit Court of Appeals felt compelled to its conclusion by certain decisions of the Supreme Court of the United States. An accurate ascertainment of the scope of such language can be best revealed by a study of the cases which required it. The essential question here is: Does such decision control intrastate activities of the kind involved in the case at bar? I think not.

The cases relied upon by the Circuit Court of Appeals to compel its conclusion are as follows:

Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092. In this case we find this statement in headnote 2(1): "The statute does not purport to control production, but regulates commerce in tobacco through marketing".

Kentucky Whip & Collar Co. v. Illinois Etc. RR., 299 U.S. 334, 57 S.Ct. 277, 81 L.Ed. 270. This was an exercise of the power of Congress to aid states in the enforcement of state laws.

National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. In headnotes 7 and 8 of this case we find this statement of one of the principles controlling in such case:

"7. Although activities may be intrastate in character when separately considered, if they have such a close and substantial relation to interstate commerce that their control is essential, or appropriate, to protect that commerce from burdens and obstructions, Congress has the power to exercise that control. * * *

"8. This power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them would, in view of our complex society, effectually obliterate the distinction between what is national and what is local and create a completely centralized government. The question is necessarily one of degree".

Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441. After stating the regulation we find the following in headnote 2, subheads (1), (2), (3) and (4):

"(1) Such regulation, for the protection of sellers or purchasers, or both, is within the commerce power as respects the selling for transportation to other States or [a]broad; and in view of the manner of the selling at the auctions, where all trans-

actions are conducted indiscriminately and virtually at the same time, Congress was authorized to apply its regulation to intrastate sales in order to make it effective as to the sales in interstate and foreign commerce. * * *

"(2) The auction is a part of the sales consummated, notwithstanding that in the market practice the growers are not bound to accept bids, and in some instances reject them. * * *

"(3) Regulations under the commerce clause may have the quality of police regulations. * * *

"(4) The inspection and grading under the Act, though they take place before the auction, have immediate relation to the sales in interstate and foreign commerce".

Santa Cruz Co. v. Labor Board, 303 U.S. 453, on page 454, headnotes 6 and 7, 58 S. Ct. 656, 82 L.Ed. 954, the following principle is stated:

"6. Where federal control is sought to be exercised over activities which separately considered are intrastate, it must appear that there is a close and substantial relation to interstate commerce in order to justify the federal intervention for its protection. * * *

"7. This principle is essential to the maintenance of our constitutional system".

Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699, 37 A.L.R. 1407. The extent of this decision is thus stated in headnote 1: "The Act punishing the transportation of stolen motor vehicles in interstate or foreign commerce is within the power of Congress".

Lottery case (Champion v. Ames, No. 2), 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492. The decision arose on a habeas corpus proceeding and the extent of the decision is stated in headnote 3, as follows: "Legislation prohibiting the carriage of such tickets is not inconsistent with any limitation or restriction imposed upon the exercise of the powers granted to Congress".

Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann. Cas.1918E, 724. The import of this decision may be well understood from the following headnotes:

"The power to regulate interstate commerce is the power to prescribe the rule by which the commerce is to be governed; in other words, to control the means by which it is carried on. * * *

"The manufacture of goods is not commerce, nor do the facts that they are intended for, and are afterwards shipped in, interstate commerce make their production a part of that commerce subject to the control of Congress".

All except the two cases of Brooks v. United States and Champion v. Ames, above referred to, were civil cases and opportunity was afforded and used to investigate the facts connected with the alleged violations of law involved. In each case it was held that the particular facts therein authorized the law.

On June 5, 1939, the Supreme Court decided the case of United States v. Rock Royal Co-operative, 307 U.S. 533, 59 S.Ct. 993, 1010, 83 L.Ed. 1446, which also was a civil case. The particular challenge involved in such case is the regulation of "the price to be paid upon the sale by a dairy farmer who delivers his milk to some country plant". It was held that such sale could be controlled, but the principle authorizing such control is thus stated in headnote 11, page 536: "Where milk sold by the dairy farmer locally and milk from other States are drawn into a general plan for protecting the interstate commerce in the commodity from the interferences, burdens and obstructions arising from excessive surplus and the social and sanitary evils created by low prices, the power of Congress extends also to the local sales".

█ In the case at bar there are no charges of facts which bring the alleged violations within the ambit of what would make interstate commerce out of what is primarily intrastate activities. The controlling facts alleged, which affect every charge made as to interstate commerce, is no stronger than this, namely: "4. At all times hereinafter referred to, a large proportion of the lumber bought, procured, obtained, produced and manufactured by the defendant was bought, procured, obtained, produced and manufactured by him pursuant to orders received by the defendant from customers without the State of Georgia. The said lumber was bought, procured, obtained, produced and manufactured with the intent on the part of the defendant that the said lumber after having been bought, procured, obtained, produced and manufactured would be sold, shipped, transported and delivered to and the said lumber was sold, shipped, transported and delivered to customers without the State

of Georgia. In buying, procuring, obtaining, producing and manufacturing the said lumber, the defendant produced and transported goods for interstate commerce within the meaning of the Fair Labor Standards Act of 1938".

There is no charge as to when the intent to ship was formed or abandoned; there is no charge that at the time of the production there was in existence any contract making the shipment a part of interstate commerce, and even as to the indefinite charge that "a large proportion of the lumber bought, procured, obtained, produced and manufactured by the defendant was bought, procured, obtained, produced and manufactured by him pursuant to orders received by the defendant from customers without the State of Georgia" there is no charge that such orders were of such an amount or nature as to directly affect interstate commerce or to become a flow of commerce or to come within any of the other conditions which would make the production of lumber, disconnected from interstate commerce at the time of production, a part of interstate commerce and subject to control by Congress.

The indictment charges that production was complete and that sale in interstate commerce was not made until after the production was completed. The essential constitutional question in reference to the interstate commerce clause is as to the meaning of the language of the Act, Sec. 6, 29 U.S.C.A. § 206: "Every employer shall pay to each of his employees who is engaged in commerce or in the *production of goods for commerce* wages at the following rates [italics ours]".

If the language "in the production of goods for commerce" be limited to production which at the time of production was directly connected with interstate commerce or was coupled with some act or acts pertaining to and making such production a part of interstate commerce, the Act is constitutional; but if the Act means, as this indictment charges, that the mere *intent* at the time of production that *after* production it may or will be sold in interstate commerce in part or in whole makes it a part of interstate commerce the Act is unconstitutional. See Hammer v. Dagenhart, supra, declaring that manufacture is not commerce and intent to subsequently sell in interstate commerce does not make manufac-

ing commerce; and Labor Board v. Jones & Laughlin, supra, declaring that intrastate activities can not be controlled under the interstate commerce clause unless such activities have "such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions".

The indictment charges nothing more than failure to pay minimum wages in *production* of goods with *intent* that such goods *after* production was completed would be connected with interstate commerce. There are no allegations notifying the defendant that such production in intrastate activities was so connected with interstate commerce as to justify the control of Congress under the commerce clause of the constitution, art. 1, § 8, cl. 3.

No man should be put on trial in a criminal case unless he knows definitely what is the charge against him. In the absence of such definiteness as would justify the law under the interstate commerce clause the indictment must fall.

If Congress can under the interstate commerce clause provision of the constitution regulate state activities only when connected with interstate commerce or affecting interstate commerce in some of the ways and to the extent limited by decisions of the United States Supreme Court why should not the act of Congress so declare. Otherwise, and if the indictments are drawn similar to the one at bar, defendants would not be notified of the crimes with which they are charged. Under the interpretation of the indictment before us and of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as urged by the government, the regulation of labor would embrace not only (by illustration in the present case) the man who cut the timber or hauled it to the mill, but also the man who planted the seed and cultivated the trees. If the interstate commerce clause carries with it such power to thus create a centralized government as against an "indestructible union, composed of indestructible States" (Texas v. White, 7 Wall. 700, 74 U.S. 700, 725, 19 L.Ed. 227) the sooner it is known the better. It is my opinion that Congress has not yet gone to that extent and that if it has the Act is unconstitutional. Therefore the decision in the Opp case, which dealt with a situation where investigation had been

had and findings promulgated, does not apply to a case of the kind at bar.

It therefore follows that the indictment is quashed.

In view of the conclusion thus reached it is unnecessary to consider other constitutional questions that have been raised.