## UNITED STATES v. HANDLER.

### No. 270.

Circuit Court of Appeals, Second Circuit.

April 19, 1944.

352

George R. Handler, of Newark, N. J., for appellant.

James B. M. McNally, U. S. Atty., of New York City (Thomas K. Fisher, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The appellant was convicted under an indictment charging him with transporting in interstate commerce from Jersey City, N. J., to New York, N. Y., certain securities having a value in excess of $5,000, which securities, as he knew, "had theretofore been stolen, feloniously converted and taken feloniously by fraud and with intent to steal and purloin the same from Ann E. Bartlett." The complaining witness, Mrs. Bartlett, testified that the appellant struck up an acquaintance with her at a restaurant in Jersey City on the evening of July 29, 1940, learned of her ownership of the securities and her intention to sell them, stated that he worked in a bank, and arranged to meet her at noon the next day to look at the securities (Boston & Maine Railroad bonds). The statement that he worked in a bank was false. When Mrs. Bartlett met him on July 30th, she handed him the bonds and he checked their value against quotations in his newspaper. He then proposed marriage to her and, while she was sitting in the automobile "kind of dazed", he departed with the bonds in his hand. She testified that at no time had she asked him to sell them for her, but she also testified that she expected to receive money for the bonds; that "he said he would take them to a friend of his that afternoon and sell them." He carried the bonds to New York and sold them as his own, telling the purchaser that he had received them in exchange for property he had disposed of. In defense the appellant testified that he and Mrs. Bartlett had been friends for several months and that she gave him the bonds to sell in order to lend him their proceeds to help him out of financial difficulties. Concededly he used the proceeds without accounting to her. The jury was instructed that the issue was whether the defendant took the bonds with the intent to steal or purloin them before

he transported them, or whether he took them with permission to sell. Neither party made any objection or exception to the charge. The verdict determined the issue adversely to the appellant.

The appellant contends that the evidence does not support the jury's verdict that he took the bonds "with intent to steal or purloin them." This raises questions as to the meaning of the quoted phrase as used in the National Stolen Property Act, the material portion of which is set out in the margin.[1] The appellant argues that the words "steal" and "purloin" are synonymous; that "steal" in a criminal statute signifies a taking which at common law would have been a larceny; and that under the evidence the jury could, not find that the appellant took the bonds from Mrs. Bartlett with an intent to commit larceny. We shall assume, despite the government's argument to the contrary, that the facts of the case do not bring it within the technical definition of common law larceny. But we cannot accept the appellant's argument that a taking with intent to steal is synonymous with technical larceny. In various federal statutes the word "stolen" or "steal" has been given a meaning broader than larceny at common law. See United States v. Trosper, D.C.S.D.Cal., 127 F. 476, 477, "steal" from the mail; United States v. Adcock, D.C.W.D.Ky., 49 F.Supp. 351, 353, interstate transportation of "stolen" automobile; Crabb v. Zerbst, 5 Cir., 99 F. 2d 562, 565, "embezzle, steal or purloin" property of the United States. In the case last cited Judge Holmes said at page 565 of 99 F.2d:

"Stealing, having no common law definition to restrict its meaning as an offense, is commonly used to denote any dishonest transaction whereby one person obtains that which rightfully belongs to another, and deprives the owner of the rights and benefits of ownership, but may or may not involve the element of stealth usually attributed to the word purloin."

We think it clear that the National Stolen Property Act was not restricted to the transportation of property taken larcenous-ly. The bill as originally passed by the Senate was limited to "stolen" property. 78 Cong.Rec. 6981. The House bill added "or taken feloniously by fraud or with intent to steal or purloin" (H.Rep. 1462, 73rd Cong.2d Sess.) and this was the bill which ultimately was enacted. 78 Cong.Rec. 8136, 8778, 8857. Obviously these added words were intended to extend the coverage of the Act beyond what would have been reached by the word "stolen". The words "feloniously converted" were inserted by the amendment of 1939. 53 Stat. 1178. In our opinion the statute is applicable to any taking whereby a person dishonestly obtains goods or securities belonging to another with the intent to deprive the owner of the rights and benefit of ownership. The appellant argues that United States v. Patton, 3 Cir., 120 F.2d 73, is contrary to this view. There the first two counts of the indictment charged the defendant with entering a national bank with intent to commit larceny therein, and a third count charged him with taking and carrying away money of a national bank "with intent to steal and purloin the same." The judgment of conviction on all the counts was reversed because the facts did not disclose a larceny. But the government had conceded that the only question involved in the appeal was whether the defendant had entered the bank with intent to commit larceny and the court expressly limited its consideration to that question. Hence the case cannot be regarded as a decision that a taking "with intent to steal and purloin" can only mean a taking with intent to commit a common law larceny.

The appellant further argues that it was error not to grant his motion for a directed verdict because he could not have been guilty as a matter of law. One branch of the argument seems to presuppose that because the indictment charged that the bonds "had theretofore been stolen, feloniously converted and taken feloniously by fraud and with intent to steal and purloin the same", it was necessary for the government to prove a taking both by fraud and with intent to steal. Although the indictment made the charges in the con-

---

[1] "Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen, feloniously converted, or taken, * * * shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both: Provided, * * * *"

junctive, the statute uses the language disjunctively and proof of the last of the charges was sufficient to establish guilt and to sustain the verdict under the court's charge. Crain v. United States, 162 U.S. 625, 636, 16 S.Ct. 952, 40 L.Ed. 1097; Pines v. United States, 8 Cir., 123 F.2d 825, 828.

Another branch of the argument is based on the word "feloniously". It assumes that the adverb in the phrase "taken feloniously by fraud" carries over to the following clause "or with intent to steal or purloin" and means that the taking with such intent must be a felony by the law of the state where the taking occurs. It is then argued that since the law of New Jersey classifies crimes only as misdemeanors and high misdemeanors, the appellant could not have taken the bonds "feloniously" in that state. This highly technical argument is not persuasive. We do not construe the statute as limited to takings which are felonies by the state law. Congress enacted it by virtue of power to regulate interstate commerce. As stated by the Supreme Court in Brooks v. United States, 267 U.S. 432, 436, 45 S.Ct. 345, 346, 69 L.Ed. 699, 37 A.L.R. 1407, where the National Motor Vehicle Theft Act, 18 U.S.C.A. § 408 was under discussion, Congress can punish "the use of such commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin." In using the terms "stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin" in the National Stolen Property Act the legislators employed expressions of "well and long known legal and popular meaning." Russell v. United States, 8 Cir., 119 F.2d 686, 688. The Act plainly forbids the transportation across state lines, with guilty knowledge, of goods which had previously been taken from their rightful owner by dishonest acts of the character described. We do not think the use of the word "feloniously" was intended to limit the application of the statute to a conversion or a taking which constitutes a felony by the state law in the strict and technical sense of the word. Congress will not be presumed to have grounded a general penal statute upon the heterogeneous penal provisions of the several states unless the Congressional intent to do so is clearly indicated. See Jerome v. United States, 318 U.S. 101, 63 S.Ct. 483, 87 L.Ed. 640. Nor was it intended to limit the statute to federal felonies; to so construe it would reduce its coverage beyond all reason. "Feloniously" is often accorded a meaning signifying merely unlawful intent. See Bise v. United States, 8 Cir., 144 F. 374, 375, 7 Ann.Cas. 165; Howenstine v. United States, 9 Cir., 263 F. 1, 4. In the statute under consideration we believe that it imports no more than that the intent is to deprive the owner of his rights of ownership—a concept expressed in larceny by saying that the taking and carrying away must be felonious; that is done "animo furandi". IV Blackstone's Commentaries, 232.

Judgment affirmed.