UNITED STATES of America,
Plaintiff,

v.

Ronald SACCO et al., Defendants.

Crim. Nos. 71–1209 to 71–1214.

United States District Court,
N. D. California.

Jan. 17, 1972.

James L. Browning, Jr., U. S. Atty.,
James E. Ritchie, Stephen H. Scott, Jack
C. O'Donnell, Special Attys., Organized

Crime and Racketeering Section, United States Department of Justice, San Francisco, Cal., for plaintiff.

Edward L. Cragen, San Francisco, Cal., for defendants Stuart Conn, Ronald Joseph Noto and Ronald Sacco.

Rudy A. Hoffman, San Francisco, Cal., for defendants James Carroll Asbury, Amerigo Bianucci, Eugene Peter Bianucci, Ronald Celle, Raymond John Cheso, Kenneth Allen Copansky, Ronald Dean and James Martin.

Herbert Yanowitz, San Francisco, Cal., for defendants Robert Eugene Betta, Robert G. Kempton and Raymond Lew Ng.

James Martin MacInnis, San Francisco, Cal., for defendant Patrick Joseph Haughey.

Edwin Train Caldwell, San Francisco, Cal., for defendant Ronald Charles Varni.

William J. Gintjee, San Francisco, Cal., for defendant Lyman R. Larson.

Merle H. Jenkins, Bakersfield, Cal., for defendant Hugh C. Henderson.

Daniel H. Weinstein, San Francisco, Cal., for defendant Thomas Martin.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE INDICTMENTS

ZIRPOLI, District Judge.

On October 7, 1971, the Grand Jury of the United States District Court for the Northern District of California charged twenty named defendants in six separate indictments with violations of 18 United States Code, Section 1955. Section 1955 provides in pertinent part as follows:

§ 1955. Prohibition of illegal gambling businesses

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

(c) If five or more persons conduct, finance, manage, supervise, direct, or own all or part of a gambling business and such business operates for two or more successive days, then, for the purpose of obtaining warrants for arrests, interceptions, and other searches and seizures, probable cause that the business receives gross revenue in excess of $2,000 in any single day shall be deemed to have been established.

(d)   .   .   .   .   .   .

(e)   .   .   .   .   .   .

The defendants move to dismiss the indictments on the ground that this section is, on its face and as applied to the defendants herein, an unconstitutional exercise of legislative power by Congress.

On October 15, 1970, Title VIII of the Organized Crime Control Act of 1970 became law. Section 803 of that title added Section 1955, which prohibits cer-

tain illegal gambling businesses, pursuant to special findings by Congress in Section 801:

"The Congress finds that illegal gambling involves widespread use of, and has an effect upon, interstate commerce and the facilities thereof."

Section 1955 thus reaches those gambling operations in violation of state law, which are conducted, financed, managed, supervised, directed or owned by five or more persons, and in substantially continuous operation for over 30 days, or having a gross revenue of $2,000 in any single day, on the basis of Congress' finding that such operations *per se* involve the use of or have an effect upon interstate commerce and the facilities thereof. The only function of this court is to determine whether the activity Congress has sought to reach is within the federal power.

■ There is no doubt that Congress has broad plenary power over interstate commerce. Congress has the express power to regulate interstate commerce and to make all laws necessary and proper for executing that power. United States Constitution, Article I, Section 8. "Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional." McCulloch v. Maryland, 4 Wheat 316, 421, 4 L.Ed. 579 (1819). In Gibbons v. Ogden, 9 Wheat 1, 196, 6 L.Ed. 23 (1824), Chief Justice Marshall first defined the broad reach of Congress' power over interstate commerce:

"It is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution."

The continuing vitality of this statement of Congress' power is beyond the slightest cavil. *See, e. g.*, United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726 (1942); United States v. Darby, 312 U.S. 100, 114–115, 61 S.Ct. 451, 85 L.Ed. 609 (1941).

■■ Unquestionably, this power extends to the regulation of criminal activities which affect interstate commerce.

"Such regulation is not a forbidden invasion of state power merely because either its motive or its consequence is to restrict the use of articles of commerce within the states of destination; and is not prohibited unless by other Constitutional provisions. It is no objection to the assertion of the power to regulate interstate commerce that its exercise is attended by the same incidents which attend the exercise of the police power of the states. . . ." United States v. Darby, *supra*, at 114, 61 S.Ct. at 457.

Thus, the means Congress may adopt, as an incident to its power over interstate commerce, "may have the quality of police regulations." Caminetti v. United States, 242 U.S. 470, 492, 37 S.Ct. 192, 197, 61 L.Ed. 442 (1917), quoting from Hoke v. United States, 227 U.S. 308, 323, 33 S.Ct. 281, 57 L.Ed. 523 (1913). The exercise of Congress' police power within the area of interstate commerce is reviewed and sustained in Brooks v. United States, 267 U.S. 432, 436–437, 45 S.Ct. 345, 69 L.Ed. 699 (1925).

■ Congress' power under the Commerce Clause also extends to intrastate activities which have an effect on interstate commerce. The Daniel Ball, 10 Wall. 557, 19 L.Ed. 999 (1871). In United States v. Darby, *supra*, the Supreme Court upheld the applicability of federal minimum wage and maximum hour statutes to an intrastate manufacturer. After reviewing the limitations on state control over matters appropriately the subject of Congressional regulation under the Commerce Clause, the Court noted: "But it does not follow that Congress may not by appropriate legislation regulate intrastate activities where they have a substantial effect on

interstate commerce." 312 U.S. at 119, 61 S.Ct. at 459. In Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), the Court used the same reasoning to sustain a federal statute governing wheat quotas against the challenge of a single farmer growing excess wheat solely for his family's personal consumption. These, and numerous other cases, amply support the power of Congress to reach intrastate activity. *See, e. g.,* Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258, 85 S. Ct. 348, 358, 13 L.Ed.2d 258 (1964): "It is said that the operation . . . here is of a purely local character. But, assuming this to be true, 'if it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze.' United States v. Women's Sportswear Mfrs. Ass'n, 336 U.S. 460, 464 [69 S.Ct. 714, 716, 93 L.Ed. 805] (1949)." See also Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).

From these authorities, it is clear that Congress has broad plenary power over interstate commerce, that this power supports the exercise of Congress' police power, and that it extends to any intrastate activities which have an effect on interstate commerce. In examining Section 1955, therefore, the court may ask only two questions: (1) Is there a rational basis for Congress' findings that the activity affects commerce? and (2) Are the means Congress has chosen to employ in controlling the activity proper? To apply the Supreme Court's enunciation of these principles in Heart of Atlanta Motel, Inc., *supra*, 379 U.S. at 258–259, 85 S.Ct. at 358, to the case now before this court:

> "The commerce power invoked here by the Congress is a specific and plenary one authorized by the Constitution itself. The only questions are: (1) whether Congress had a rational basis for finding that [gambling operations of the type defined in § 1955] affected commerce, and (2) if it had such a

basis, whether the means it selected to eliminate that evil are reasonable and appropriate."

Only the first question is before the court on the motion to dismiss. The Supreme Court's resolution of the second question in Heart of Atlanta Motel, Inc., *supra*, 379 U.S. at 261–262, 85 S.Ct. at 360, is dispositive here:

> ". . . It may be argued that Congress could have pursued other methods to eliminate the obstructions it found in interstate commerce caused by racial discrimination. But this is a matter of policy that rests entirely with the Congress not with the Courts. How obstructions in commerce may be removed—what means are to be employed—is within the sound and exclusive discretion of the Congress. It is subject only to one caveat—that the means chosen by it must be reasonably adapted to the end permitted by the Constitution. We cannot say that its choice here was not so adapted. The Constitution requires no more."

Accordingly, if the court finds that Congress had a rational basis for its findings, the court's inquiry is over.

The court begins with the principle approved by the Supreme Court in Perez v. United States, 402 U.S. 146, 152, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), quoting from United States v. Darby, *supra*, 312 U.S. at 120–121, 61 S.Ct. at 460:

> " 'Congress has sometimes left it to the courts to determine whether the intrastate activities have the prohibited effect on the commerce, as in the Sherman Act. It has sometimes left it to an administrative board or agency to determine whether the activities sought to be regulated or prohibited have such effect, as in the case of the Interstate Commerce Act, and the National Labor Relations Act, or whether they come within the statutory definition of the prohibited Act, as in the Federal Trade Commission Act. And

sometimes Congress itself has said that a particular activity affects the commerce, as it did in the present Act, the Safety Appliance Act and the Railway Labor Act. In passing on the validity of legislation of the *class* last mentioned the only function of courts is to determine whether the particular activity regulated or prohibited. is within the reach of the federal power.' (Italics added.)"

In *Perez*, the Court upheld the petitioner's conviction of "loan sharking," unlawfully using extortionate means in collecting and attempting to collect debts, in violation of Title II of the Consumer Credit Protection Act. The court held that Congress' findings were adequate to support its conclusion that "loan sharks" were members of a class which had a substantially adverse effect on interstate commerce. In doing so, the Court applied the "class of activities" test it used in Heart of Atlanta Motel, Inc., *supra* and Katzenbach v. McClung, *supra*; an explicit statement of that test was articulated by the lower court in *Perez*:

> "Congress can regulate intrastate activity without any showing in a particular case that the activity affected interstate commerce, provided that a proper determination has been made that such intrastate activity, considered as a class, does have such effect. . . . " United States v. Perez, 426 F.2d 1073, 1078 (2d Cir. 1970).

Applying this test, the Supreme Court noted that Congress might appropriately consider the total incidence of the practice on commerce and concluded: "Where the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class. Maryland v. Wirtz, 392 U.S. 183, 193 [88 S.Ct. 2017, 2022, 20

L.Ed.2d 1020]." 402 U.S. at 154, 91 S. Ct. at 1361.

The defendants in this case argue that Congress has chosen to make no findings regarding the class of "purely local gambling activities" they contend are involved here. It is true that Congress did not break down its findings; it did not seek to make specific findings with respect to each of the subclasses of illegal gambling activities which the defendants urge must be made. However, the *Perez* court explicitly rejected the defendants' argument that Congress must do so: "We have mentioned in detail the economic, financial, and social setting of the problem as revealed to Congress. *We do so not to infer that Congress need make particularized findings in order to legislate.* We relate the history of the Act in detail to answer the impassioned plea of petitioner that all that is involved in loan sharking is a traditionally local activity." 402 U.S. at 156–157, 91 S.Ct. at 1362 (emphasis added). Based on the legislative history, this court cannot say that Congress' general finding that there is a connection between illegal gambling and interstate commerce is irrational. Relating the history of the section of the Act under consideration here in detail, therefore, would not serve any useful purpose.[1]

It is sufficient that Congress has defined a limited class of illegal gambling activities which it has determined affects interstate commerce. Section 1955 does not purport to reach all illegal gambling enterprises. Only those illegal gambling businesses of a certain size with gross revenue of $2,000 in any single day or in substantially continuous operation for a period in excess of thirty days are within its ambit. The courts will not substitute their judgment for the judgment of Congress about the

1. Compare Katzenbach v. McClung, *supra*, 379 U.S. at 304, 85 S.Ct. at 384: "Here of course, Congress has included no formal findings. But their absence is. *not fatal to the validity of the statute,* see United States v. Carolene Products

Co., 304 U.S. 144, 152 [58 S.Ct. 778, 783, 82 L.Ed. 1234] (1938), for the evidence presented at the hearings fully indicated the nature and effect of the burdens on commerce which Congress meant to alleviate."

wisdom of a statutory scheme of this character: "[W]hen it is necessary in order to prevent an evil to make the law embrace more than the precise thing to be prevented it may do so." Westfall v. United States, 274 U.S. 256, 259, 47 S. Ct. 629, 71 L.Ed. 1036 (1927). Nor, however, must the law "extend to all to whom the postulated rationale might in logic apply." Flemming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L. Ed.2d 1435 (1960). Therefore, Congress may properly reach certain purely intrastate gambling activities without reaching all purely intrastate gambling activities.

Whether this exercise of federal power by Congress works a substantial alteration of federal-state relationships in violation of the Ninth and Tenth Amendments is doubtful. In *Perez*, Mr. Justice Stewart gave eloquent expression to the view that it does:

Congress surely has power under the Commerce Clause to enact criminal laws to protect the instrumentalities of interstate commerce, to prohibit the misuse of the channels or facilities of interstate commerce, and to prohibit or regulate those intrastate activities that have a demonstrably substantial effect on interstate commerce. But under the statute before us a man can be convicted without any proof of interstate movement, of the use of the facilities of interstate commerce, or of facts showing that his conduct affected interstate commerce. I think the Framers of the Constitution never intended that the National Government might define as a crime and prosecute such wholly local activity through the enactment of federal criminal laws. In order to sustain this law we would, in my view, have to be able at the least to say that Congress could rationally have concluded that loan sharking is an activity with interstate attributes that distinguish it in some substantial respect from other local crime. But it is not enough to say that loan sharking is a national problem, for all crime is a national problem. It is not enough to say that some loan sharking has interstate characteristics, for any crime may have an interstate setting. And the circumstance that loan sharking has an adverse impact on interstate business is not a distinguishing attribute, for interstate business suffers from almost all criminal activity, be it shoplifting or violence in the streets.

Because I am unable to discern any rational distinction between loan sharking and other local crime, I cannot escape the conclusion that this statute was beyond the power of Congress to enact. The definition and prosecution of local, intrastate crime are reserved to the States under the Ninth and Tenth Amendments. 402 U.S. at 157–158, 91 S.Ct. at 1363 (dissenting opinion).

Mr. Justice Stewart's opinion, however, was rejected by the majority of the Court in a case which involved all intrastate loan sharking. This court cannot accept it in a case involving only the limited class of intrastate gambling activities which Congress has defined in Section 1955.

The court concludes that 18 United States Code, Section 1955 is a constitutional exercise of Congressional power. Congress has made a rational finding that the illegal gambling operations defined in that section have an effect upon interstate commerce and has made them subject to federal regulation. Where Congress violates no express constitutional limitation in the exercise of its power over interstate commerce, the courts will not interfere. The defendants' claim that the exercise of that power here is in violation of the Ninth and Tenth Amendments is without merit.

The question remains whether Section 1955 is constitutional as applied to the defendants in this case. Defendants maintain that Congress did not intend to reach purely local illegal gambling activities and conclude that where uncertainty exists concerning the intended reach of the federal power, any "ambiguity

concerning the ambit of criminal statutes should be resolved in favor of lenity." Rewis v. United States, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). Defendants also argue that since an element of the offense is violation of state law, Congress is attempting to punish essentially intrastate activity which may be criminal in one state and not in another. For reasons stated hereinafter, the court has concluded that neither argument is valid.

■ In Rewis v. United States *supra*, the Supreme Court reversed the convictions under 18 United States Code, Section 1952, the Travel Act, of two operators of an intrastate lottery patronized by out-of-state bettors. Section 1952 prohibits interstate travel with the intent to "promote, manage, establish, carry on, or facilitate" certain kinds of illegal activity. The Court refused to hold that conducting a gambling operation frequented by out-of-state bettors, by itself, violated the Act as such an interpretation was supported neither by the language of the statute nor its legislative history. In this court's view, *Rewis* is inapposite [2] because the alleged activities of the defendants in this case fall squarely and unambiguously within the purview of Section 1955:

> "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. . . .
>
> "Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion. . . . There is no ambiguity in the terms of this act." Caminetti v.

United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The court entertains no doubt that Congress intended Section 1955 to reach the types of gambling activities involved in this prosecution.

■ In Clark Distilling Co. v. Western Maryland Ry. Co., 242 U.S. 311, 327, 37 S.Ct. 180, 185, 61 L.Ed. 326 (1917), the Supreme Court answered the argument that Congress' exercise of its power over commerce must be uniform:

> "So far as uniformity is concerned, there is no question that the act uniformly applies to the conditions which call its provisions into play [in this case, gambling in violation of state law],—that its provisions apply to all the States,—so that the question really is a complaint as to the want of uniform existence of things to which the act applies, and not to an absence of uniformity in the act itself."

The Court noted as well that "it is obvious that the argument seeks to engraft upon the Constitution a restriction not found in it, that is, that the power to regulate conferred upon Congress obtains subject to the requirement that regulations enacted shall be uniform throughout the United States." *Id.* In considering a similar challenge to 18 United States Code, Section 1952, the Ninth Circuit specifically rejected the Fifth Amendment argument the defendants make in this case. "Legislation which constitutes an exercise by Congress of its plenary power over commerce is not repugnant to the due process clause of the Fifth Amendment merely because of variation in State laws." Turf Center, Inc. v. United States, 325 F.2d 793, 796 (9th Cir. 1963). This court therefore finds no violation of the Fifth Amendment in the language or application of Section 1955.

Section 1955 is in all respects a valid and constitutional exercise of Congress' plenary power over interstate

2. The Court noted that "[b]oth parties correctly concede that the questions in this case are solely statutory. No issue of constitutional dimension is presented." Rewis v. United States, *supra*, at 811 n. 5, 91 S.Ct. at 1059.

commerce.[3] The court cannot say either that Congress did not have the power to enact it or that it does not apply to the alleged activities of the defendants herein. The motion to dismiss the indictments is denied.

---

**3.** The constitutionality of 18 United States Code, Section 1955 has been uniformly upheld by the courts. *See* United States v. Gray, Cr.No. 71–99 (D.S.C.1971); United States v. Snopek, No. 71 Cr. 117 (E.D.Mo.1971); United States v. Gullot, Cr. 71–313 (E.D.La.1971); United States v. Becker, 334 F.Supp. 546 (S.D.N.Y. 1971); United States v. Wolk, 4–71 Cr. 155 (D.Minn.1971).